All right. Mr. O'Neill. May it please the court, counsel, good morning, your honors. Patrick O'Neill from Larson King in St. Paul, Minnesota on behalf of the plaintiffs. We're here on a Rule 12, 12b-6. I don't need to remind the court what the standard is of 12b-6, but just briefly, all allegations of our 107-page complaint are to be deemed true. All inferences are to be drawn in our favor. There should be no weighing of evidence, no credibility determinations, and no findings of fact. I submit that there's three reasons here why there should be a reversal. Number one is jurisdictional discovery should have occurred. Number two is the discovery rule in the state of Illinois permits the postponement of the start of the statute of limitations. And the third reason I will get into involves equitable tolling and equitable estoppel. I'm going to take those in order. The first is jurisdictional discovery, and the trial court decided to lump all five plaintiffs together, all 22 causes of action together, and applied the New York borrowing statute and found that the state of Illinois five-year statute of limitations applied. We submit that was premature. We asked for jurisdictional discovery, and the five plaintiffs, RCMLLC, never lent any money. Now, they're an agent, but they never lent any money, so they were never damaged. Yorkville is what we call the family office. They are based in Illinois. But special credit, the biggest company that lost the most amount of money is Cayman Island Exempt Company, as well as Rhone 2 and RCMLTD. And for the borrowing statute to apply, you have to find that all 22 causes of action are outside the state of New York. And here, without breaking them down claim by claim, we submit that was error. For instance, and for example, counts 20 and 21 were clearly, we submit, occurred in the state of New York. This has to do with the $6.5 million from our March loans. And those are, they happened in New York. And then the situs of the injury. Where was the injury felt? That's a very fact-intensive question. So we submit on jurisdictional discovery that that should have occurred, and a 12B6, a finding of fact, should not have been made. The second reason is, what is the Illinois discovery rule, and why should it postpone the start of the statute of limitations? I submit this is really the heart of the case. It's the heart of this appeal. It's on page 21 of trial court's order. It states, and this is at appendix 1376. In this case, the court concludes that plaintiffs have failed to demonstrate that the discovery rule suspended the accrual of the statute of limitations. And so let's not forget our timeline. Timelines are important in statute of limitations analysis. January 30th, 2014 is when we commenced our case. Five years later, under the Illinois statute, is January 30th, 2009. The trial court found, because of a September arrest of Mr. Petters, and then a indictment in 08, that somehow the statute of limitations started to run, and therefore we are barred as a matter of law. When was the Illinois receivership action filed? The Illinois receivership action was filed in Illinois State Court, September 30th, 2008. Why doesn't that trigger the time? Your Honor, the reason that the Illinois case does not trigger the time is it shows that we didn't dawdle or slumber on our rights. We were being proactive. I think it's fundamental to understand that there is a Ponzi scheme, diverting invoice business fraud, and there's a Polaroid fraud. We did start a lawsuit on September 30th, 2008, but that lawsuit was stayed on October 22nd, 2008, by Judge Montgomery. Therefore, we are prevented by that stay. And I will submit to you, I've done the research, it's the longest stay, one of the longest stays in the history of our country, 11 years. There was a stay against any discovery by Mr. Petters. So if you sue that case and it stayed, and the receiver was then appointed up in Minnesota, and so there was, however, a receiver in Illinois, the case just went away. But it stayed, and so we have no right to any discovery. We couldn't get Mr. Petters' emails. We couldn't get any knowledge or any facts to support our aiding and abetting claim. And that's the point that we're trying to make with the discovery rule in Illinois. If you understand, or I submit you should read the Kahn versus Deutsche Bank Grant Thornton case. And everybody has cited the Kahn case. But the Kahn case says, when we, the question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact. It is one of fact. And we can't be held, in this case they point this out, and I think this is one of our central themes. We can't be held to knowing the inherently unknowable. There is no way that we could have determined from an arrest and an indictment that somehow our own banker, we're a customer too, that somehow our banker aided and abetted in this fraud. And that's the key, I think, of the analysis is there's two frauds. And if you understand the discovery rule, we can't be known, we can't be held to a standard of knowing the inherently unknowable. And Kahn says it's a question of fact, not a question on 12B6. Now, in Kahn, they had inquiry notice in 99, but they held the statute of limitations did not begin to run until 2008. And this is an Illinois Supreme Court. And it says a reasonable inference from these allegations, the plaintiffs did not know and could not reasonably have discovered the wrongful nature. And I know members of this court is familiar with the aiding and abetting, the three elements. I read the Zayed versus Associated Bank case. And it's very difficult to prove actual knowledge of your own banker that a banker knew that his customer was getting in there. But Zayed denied a Rule 12. It was a Rule 56. But can you imagine the difficulty of a pleader? A Rule 9 obligation from us. What facts did we have from an arrest and indictment in 2008 to plead aiding and abetting fraud by J.P. Morgan and Richter? None. No, no facts. And so we're in this box. How do you plead Rule 9 and get dismissed there versus wait? And so we scratched and clawed and investigated as best we could. And here's the thing about Illinois. Illinois says we're not going to foreclose the person that didn't know about their cause of action. We're going to let them show us what diligent inquiry did you make. And this is one of our biggest errors, we believe, that the trial court made. He never gave us that chance to show all the diligent inquiry we engaged in before we found these facts. Now, we have alleged, which is to be deemed true in paragraph 243, that we did not find out our facts for aiding and abetting, actual knowledge and substantial assistance, until 2013. We sued the case in 2014. Now, think about an arrest and an indictment. They don't mention J.P. Morgan. They don't mention the Polaroid fraud. He wasn't prosecuted for the Polaroid fraud. And when you're having a six-week criminal trial, which happened in December of 2009, nobody is free-flowing of information as it happened. Now, there's another case, this RCM versus Fredrickson and Byron case. I believe, you know, I feel like I have to talk about it. We're not afraid of it. It needs some setup. So in RCM versus Fredrickson and Byron, my client sued the law firm of Fredrickson and Byron in 2013. There's a two-year statute, so it's 2011. So any facts that you could have discovered before 2011, you could be barred. And what the court did say, it did rely on the arrest and the indictment. But the court also went into that a diligent inquiry during the criminal trial would have revealed the second source of this injury. And we were never given that opportunity in our case because the criminal trial is within our five years. And so we weren't able to show that even if we had monitored the criminal trial, what we could have discovered. And so there's all these jump-off points. It's not 2008. You could say the criminal trial puts you on notice of aiding and abetting fraud. That's 2009 within our five years. You could say that, well, the trustees sued J.P. Morgan in 2010. Didn't that give you some knowledge and notice? And this is what happens in a discovery rule analysis in the state of Illinois, which is where we are. The burden is on us to show we couldn't have discovered it. And if we are given that chance, I can unanimously tell you that we will show that we could never have discovered that J.P. Morgan knew of the fraud in 2007 and found another lender, the Ritchie Entities, to replace it. And J.P. Morgan knew that. They got paid in full. Then they got $6.5 million in March of 2008, and then they seized money in September of 2008 through a security agreement. And these are all facts that we learned and had to piece together. Now, there's another case that is worth reading, and it's called the Mitzius, Mitzius v. Eiffel. And we are in some nuances of the Illinois law, but these make sense to me. Mitzius had a medical malpractice case that was ongoing, and they discovered a product liability case later. And the Illinois court said, we're going to allow the second source of your cause of action. And it's not about the person. It's about the cause of action. Very important. The trial court said, just because you didn't know of that defendant doesn't mean the statute didn't start to run. And we're like, that's not the standard. It's whether you knew of the cause of action. Did we know of an aiding and abetting cause of action in 2008? And Mitzius says that we are going to let a second source of injury, and this is what Fredrickson and Byron said, we're going to let an analysis of the second source of injury take place. And we submit that we should have our day in court and discovery. Now, the last reason there should be a reversal is we argued equitable tolling. Counsel, before you get to that, I'd like to spend some time, if we could, on the statute of limitations issue, and particularly the accrual of the claims. And with regard to the Cayman Island entities, can you tell me whether the record shows where those entities held their assets, and specifically the bank accounts from which Petters received funds? We did ask to amend our complaint. The record really has its paragraphs 8, 9, 10, and 11, which says that the Cayman Island exempt companies are principal place of business. It doesn't use the words principal place of business. We use the state of incorporation. But if you would allow the situs of the injury, an injury on the situs of the injury, I would tell you that the Cayman Island special credit, for instance, is a Cayman Island exempt company. The board of directors are in Cayman Islands. All the investors are in Cayman Islands. And so the money that was lost was where the injury was felt, I think is the magic word. Where was the injury felt? But do we know where those accounts were? Well, I'm sure there was a bank account in Illinois. But if you ask if it's in the record, it doesn't say that. And we don't have to plead against an affirmative defense, which is why we believe that reasonable inferences should be drawn in our favor. We stated where they're incorporated. And the other leap that the trial court made was that special credit does not have an agency relationship with RCMLLC. Special credit has an agency relationship with RCMLTD. It's Cayman Cayman. And the trial court said that the agency relationship was with Illinois, and therefore you're in Illinois. I don't know if that answers your question. Going on to the third point is equitable tolling. And equitable tolling is different than equitable estoppel. Equitable tolling is faultless. And you don't have to dive into the JP Morgan. But I will tell you that I read their brief that this is not the extraordinary case for equitable tolling. And I would submit that if this isn't the case for equitable tolling, I don't know what is. I've already referred to an 11-year anti-litigation stay against Tom Petters. What does that mean? That means we can't get subpoenas. We couldn't get his e-mails. We couldn't get the inner workings of how this loan worked. And we didn't know about Richter being the consultant with Polaroid. We didn't know about round trips and blocked accounts. We didn't know any of that. What other things are there that are beyond our control? We pled legal disability. I've never pled legal disability in my life. But there is a legal disability in this case because of the stay, the criminal trial, the appeal, abstaining. All these courts did everything that they could to marshal the bankruptcy case. The trustees case against JP Morgan, the motion to dismiss was under advisement for four and a half years. That means it just sat there with no discovery. And we couldn't get it. And this is why equitable tolling should apply here. Equitable tolling should say, and it's consistent with the discovery rule, is let's not foreclose a claim that they didn't know about. And that's what's going on here. If you rule 08 is the start, you're going to foreclose and bar a claim that was inherently unknowable. And it's contrary to the very discovery rule policy in the state of Illinois. Now equitable stop all gets more into their conduct. And JP Morgan was not exactly volunteering information about what they knew prior to us loaning the money. My client was a $300 million depositor. My client was a client of JP Morgan at the time that they were paid off through these loans and investments. And we tried to get subpoenas. And there were protective orders and other legal bases to deprive us from our opportunity to discover these claims. And we were not dawdling and slumbering. We were trying. And I think, again, on 12B6, we should be allowed. If you follow CON, we should be allowed. It's a fact question about whether we knew or should have known. It's a fact question as to what our injury is. Is it the Ponzi scheme injury? Is it the Polaroid injury? It's a fact question as to we're wrongfully caused. There's all these cases that talk about how you break all that down into fact-intensive inquiries. And to just summarize these all together, consolidate all the claims together and the plaintiffs all together, we submit was error. I'm going to reserve the rest of my time. Thank you. Thank you. All right, Mr. Turner. Thank you, Your Honor. May it please the Court, Alan Turner from Simpson Thatcher and Bartlett representing the JP Morgan defendants. I would like to focus my comments on the statutes of limitation issues which Mr. O'Neill addressed. If Your Honors have any questions regarding the brief submitted by JP Morgan Europe or the other issues presented in our main brief, I'm happy to answer those questions, too. Firstly, with respect to the borrowing statute, which was the first issue that Mr. O'Neill addressed, I think it's important to first discuss why we get to the New York borrowing statute. This is a case that involves state law claims. It was filed in New York. Therefore, under controlling Supreme Court precedent, the transferee court, the Minnesota District Court, is to apply the rules that were applicable in the original court, which is the court in New York. That court would apply the New York borrowing statute, and that is why the District of Minnesota correctly applied the borrowing statute here, too. The circuit recognized in Thorne v. IBM that that is the exact analysis that one should take when a case has been transferred to a district court within the circuit. Mr. O'Neill argues that discovery was necessary in order to find out where the facts relating to each cause of action occurred. But the borrowing statute and the cases decided under that statute expressly say that the court does not need to do that. One does not need to conduct a choice of law analysis. One simply applies the statute's plain language as written, which says that when a non-resident, non-New York resident, sues on a cause of action accruing outside of New York, then the borrowing statute requires the cause of action to be timely under both the limitations period in New York and the jurisdiction where the cause of action accrued. Now, the case law under the statute uniformly holds that the place where the cause of action accrues, where economic injury is alleged, is the principal place of business of the plaintiffs. Counsel, in that regard, how can we conclude from the record that we have before us where the Cayman Islands exempt entities for those claims accrued? Your Honor, I think the starting point here is that the plaintiffs did not plead their principal place of business. They did not plead it in their original complaint. And then when we put that at issue on our motion to dismiss that original complaint, they amended their complaint but again did not plead their principal place of business. The second time they amended their complaint, again they did not plead their principal place of business. What we have before the court and in the record, which the district court relied upon, is pleadings and arguments that the Cayman entities have made in other cases. Specifically, they argued in a prior lawsuit that their home forum was Illinois. They argued the plaintiffs and many of their executives are in Illinois. That's in the J.P. Morgan appendix at pages 6 to 8. Counsel, I think the problem that may exist there, though, is timing. We know that from prior pleadings where they claim to have their place of residence. But what about at the time the claims accrued in 2008? How do we match those up? We can't just extrapolate a prior pleading to a particular date unless the dates match. I believe that those prior statements by the Cayman entities are not specific as to any particular time period. And certainly the plaintiff has not suggested that the place of business of the Cayman entities has changed during the relevant period. So we should just assume that they haven't changed? It is the plaintiff's burden to plead their principal place of business when that has been put in issue with respect to jurisdiction. We also have the fact that RCMLLC, which is the investment manager of each of those entities, is itself based in Illinois. It did not plead its principal place of business in this case, but it has in other cases, which we've referred to in our brief. I'd like to turn to the discovery rule, which Mr. O'Neill addressed. He argues that the Ritchie plaintiffs did not ascertain the facts regarding their aiding and abetting claim against J.P. Morgan until much later. But the Illinois discovery rule does not require that a plaintiff know who allegedly wronged them. They do not even need to know or be able to plead their cause of action. So that is the incorrect test that Mr. O'Neill is espousing today. Instead, under the card against Deutsche Bank, the test is whether an injury occurred, whether the party knows or reasonably should know that both that an injury has occurred and that it was wrongfully caused. That was plainly known by the Ritchie plaintiffs when they filed their suit in Illinois on September 30th of 2008, as Judge Cobb's questioned Mr. O'Neill, alleging many of the same facts and injuries as are alleged here. We know from the public record, which is documented in the numerous cases surrounding the Petters bankruptcy and Ponzi scheme, that it was public knowledge that there was a Ponzi scheme in late 2008. In other cases where the Ritchie plaintiffs also brought suit against other parties, they actually made concessions that they knew in late 2008 that they had been injured and that that injury was wrongfully caused. I'm referring specifically to the Ritchie capital management against Fredrickson and Byron case, which was in the Illinois appellate court. Two other cases which we reference on page 36 of our brief, footnote 22, Ritchie capital management against Costco, Ritchie capital management against U.S. Bank. In all of those cases, the courts, including appeals courts, held that the Ritchie plaintiffs knew that they had been injured and knew that that injury was wrongfully caused in late 2008. So you say they need not be on notice as to the perpetrator? Correct. That is phone book Illinois law, Your Honor. The only exception to that is the case that is referred to by Mr. O'Neill, the Mitzias against Iflow case, which is a very narrow exception and has been very narrowly construed by the Illinois courts. It is where the cause of action was, quote, unknown to science. And the facts there were that a patient in a hospital who had been injured in the course of a surgery did not know that one of the injuries that they had suffered had been caused by a particular piece of equipment because the science had not developed to link that piece of equipment to the plaintiff's injury. That is a completely different situation than what we have here, where Ritchie knew that it had been injured. It knew that that injury was wrongfully caused, and it had the means to pursue whatever steps it could take to file a claim. Now, Mr. O'Neill says that they didn't have the ability to plead that cause of action on day one. That's why, under the statute of limitations, they have five years, five years to take whatever steps they need in order to be able to plead a claim. They did not do so here. I will have to defer on the questions of equitable estoppel and equitable tolling. We've addressed those in our brief. I see that my time is up, and perhaps my counsel can address those issues, unless Your Honor is happy. I think not. Thank you. And this is Ms. Goldenberg. You may proceed. May it please the Court, Elaine Goldenberg, on behalf of the syndicated lender. Syndicated lenders are not alleged to have aided and abetted any fraud here. Claims against them arise only from the fact that their loan was repaid to them in 2008, and those claims are unjust enrichment and fraudulent defiance. And with respect to the statute of limitations issues that we've been discussing, I'd just like to emphasize what my friend said about the discovery rule, and that the plaintiffs don't have to have known for the causes of action to have begun accruing exactly who they wanted to sue, exactly even what their cause of action was. All they have to have had is noticed that there was some injury and that the injury may have been wrongfully caused, and Illinois law is extremely clear on that. And with respect to both of the causes of action against the syndicated lenders that I mentioned, there's no question that those causes of action were accrued in late 2008 because of what they knew. At that point, Petters had been arrested, indicted. The PGW and PCI companies that were affiliated with him had also been indicted. They had gone into bankruptcy. Polaroid had gone into bankruptcy. And also, the Ritchie entities themselves filed a suit in late 2008, as was referred to earlier, alleging that PCI and PGW had engaged in fraud because the Ritchie entities were last in to a Ponzi scheme. So at that point, the Ritchie entities are certainly on notice, and it is clear from the face of the complaint and the other matters that the court can take account of at the motion to dismiss stage that they have had an injury, the Ritchie notes haven't been repaid, and that injury may have been wrongfully caused. With respect to fraudulent transfer, where the statute of limitations was only one year from the time a plaintiff could have discovered the transfer, there are yet more facts. I think those late 2008 facts are enough, but in addition, in 2010, there was a suit by the trustee against J.P. Morgan alleging fraudulent transfer, and in 2012, there was a ruling by the bankruptcy court about where this money went from the Ritchie notes and exactly how the Polaroid loan was written. And all of that is more than enough to put them on notice under the Illinois discovery rule that their claims had accrued, and then they have the period of time that's provided in the statute of limitations to investigate or figure out exactly what claim they want to bring and who they'd like to sue. With respect to equitable tolling and equitable estoppel, neither of those is applicable here on the face of the complaint, and it is, as my friend acknowledged, their burden to allege facts showing these extraordinary equitable doctrines that would toll the statute of limitations for a period of time. With respect to equitable tolling, the plaintiffs have to have been prevented from asserting their rights in some extraordinary way. With respect to equitable estoppel, a defendant has to have engaged in active prevention of the plaintiff's filing, and neither of those is true here. All plaintiffs are relying on with respect to equitable tolling is discovery stays and protective orders in other cases. But as the district court pointed out here, a plaintiff doesn't usually get any pre-suit discovery. And so the fact that the plaintiffs here, because of a court order, couldn't get discovery that they wanted in another litigation that would have allowed them to gather some facts is not enough to create any kind of extraordinary circumstance here. Far from it. That's the usual circumstance, is that plaintiffs have to investigate their claims without any discovery in any kind of official court proceeding. And with respect to equitable estoppel, that's again the active prevention of plaintiff's filing. First of all, there are no allegations of any kind that the syndicated lenders engaged in any conduct that would have prevented the plaintiffs from bringing their claims. But even with respect to J.P. Morgan, who plaintiffs are focused on, again, all that's alleged here is that J.P. Morgan didn't comply with a subpoena in exactly the way that plaintiffs would have liked, and then a court entered a protective order. And that cannot possibly be enough to count as active concealment of the claim or any kind of misleading of the plaintiffs that would have prevented them from filing. And again, as the district court pointed out here, plaintiffs filed their suits, this suit that we have before us, without those materials that they were seeking from J.P. Morgan, and so it couldn't possibly have been necessary for them to have it. It's true that there was a fraud here, and plaintiffs have emphasized that. The Ponzi scheme that Petters engaged in was definitely a fraud, but that all came to light, again, in late 2008, and there's nothing in this complaint, and again, plaintiffs' burden to allege it in the complaint, suggesting that there should be any tolling here as a district court. Counsel, what is your view on the statute of limitations, which is applicable to these entities which are referred to as the Cayman Island entities? Well, I think, for one thing, as my friend referred to, plaintiffs have studiously refused to allege the principal place of business of these entities when they were on notice of these claims. They allege the defendant's principal place of business, but not their own. In that circumstance, I think it's perfectly proper to look, as the district court did, at these other sources, public records, things you can take judicial notice of, and again, there's case law, we've referred to this in our briefs, that says Cayman Island exempted companies have to primarily operate outside the Cayman Islands, or they cannot be Cayman Island exempted companies. If you put that together with the things that the Cayman Island companies have said in other cases, in other pleadings, including peddler-related cases, about where their principal place of business is, the address in Illinois that they gave when they filed their proofs of claim in bankruptcy, all of those things, in a situation in which it was well within plaintiff's power to plead this, and they didn't plead it, are enough to demonstrate that their principal place of business, can't be in the Cayman Islands, must have been in Illinois, where the other companies that they were affiliated with were also headquartered. Counsel, isn't it important to know where their assets were held for that purpose? Well, given their own allegations, I'm not sure that it is, Your Honor. I think they know where their assets are held, and they alleged in these other cases that their principal place of business was in Illinois, and so I think we can infer from their own statements, which again, the court can take account of at this stage of the case, that it's based on their knowledge of where their assets are, where their business is, and how they operate, and so the court can take that at face value, since plaintiffs haven't alleged anything different in this case. I thought the court in this regard really referred only to an allegation of the second amended complaint that talked about the management, the companies that managed these entities. Wasn't that the only, I didn't recall the court referring to anything else, really, in trying to answer this question of residence? The district court did, and I should say, I see that I'm over my time, I'm going to take my friend's time. You can answer. Thank you. The district court referred to these other pleadings and other statements and other decisions that I've been talking about. For instance, the Jeffries case in the northern district of Illinois was one where the Cayman Island Exempted Companies came in and said, our home forum is Illinois. And the district court did look, outside the amended complaint here, to these other filings, public records, court rulings, and it did so in citing decisions from this court that say that at a motion to dismiss stage, the court can look to that kind of material. So the court didn't confine itself to the complaint, and of course the court couldn't confine itself to the complaint here on this subject because the complaint doesn't contain the information about where the plaintiff's principal place of business is. And nothing that the court cited and looked to contradicts anything that's in there. If I may just say one last thing, which is there are alternative grounds for dismissing the fraudulent conveyance and unjust enrichment claims, and those are discussed thoroughly in our brief if the court decides not to dispose of this case on statute of limitations grounds. All right. Thank you very much. Mr. O'Sullivan. Mr. Court, John O'Sullivan on behalf of Richter Consulting. We have, Your Honors, a stand-alone set of grounds on which the dismissal applies to us and should be affirmed, and it's really failure to state a claim, and I want to touch on four points. Number one, in the most recent submission by Mr. O'Neill, the reply he or they attempted to upgrade our role in this entire situation and actually said in the argument that my clients, Richter Consulting, had actual knowledge of Petters fraud. It caught our attention because that hadn't been said before, but if you look at the reply brief, it cites to paragraph 162 of the pending complaint, the current complaint, and we're not mentioned there. The actual complaint doesn't support the allegation, and then at paragraph 192 of the current complaint, there's a chart where they lay out who knew what when, and when they get down to knowledge of the Petters fraud and my client, Richter, we don't know. So the complaint doesn't support that allegation, and I think without that we are further away. The second thing I would point out is that in the backup support, we argued very strongly that in this situation, who, what, where, when, how is vital. Those details of what we did, what we supplied, what we gave to them, how they relate, that stuff is critical because in this world where you have no contract, we have no business relationship with any of the Petters. We never met any of them. We didn't do a transaction with them. They didn't pay us anything for our services. In that situation where you're trying to manufacture duty or reliance in that rare situation, you need to have a lot of details about what really happened, how the parties behaved. With respect to each other, you might impose that duty where they haven't agreed to do it themselves. Now it's ironic that Mr. O'Neill says they didn't even know about us. One of the reasons they didn't sue us is because they never heard of us. Well, if you relied on us, you know about us. If that's your tort claim or your aiding and abetting claim, if they actually came to us and said we're going to trust you, we're going to invest or we're going to loan based on you, they would have known on day one who we were and what we said, and they haven't alleged it even as to today. And the, sorry for my voice, the Cantero case from the 8th Circuit, flat out says the who, what, where, when is vital, and without that you have no claim and you don't get past a motion to dismiss. One other place where I think they upgrade themselves without any facts is they say that my client Richter must have ratified, ratified something that the other defendants might have done. And again, that's exactly the kind of word that Iqbal or Twombly would say is a legal conclusion. Lawyers and judges know what that is. Ratified means something to you. We sat in the meeting, we heard what they said, we saw the paper, we put our name on it, we said, you know, we're going to vouch for this. There are no facts like that. There's nothing behind the ratified. And that doesn't pass the muster on the motion to dismiss. The last thing I'll say, my voice holds out, is the only time they really do quote from Richter, from my client, in the whole complaint, where they really have words from our mouth, it's us saying, Richter, the consultant on cash flow, saying the Polaroid business is not currently viable. That's the one thing we say. That is not a rallying cry to invest your money. If anything, it's a warning. And so we stand by all the things in our brief on the other arguments and also statute of limitations arguments. But as to us, there's a failure to state a claim. We've raised it at every iteration of this pleading. And the bankruptcy court put the question directly to Mr. O'Neill, which is, do you have anything going directly from Richter to Ritchie? And he said, judge, if you understand the law, I don't need it. He's wrong about that. The Quintero case flat out says who, what, where, when. You need to have it. And without that, we're not going to manufacture duties or find reliance. Any questions? Thank you very much. Counsel, you have just under three minutes. Thank you again. May it please the court, counsel. Your honors. Counsel, what about this argument that in Illinois you don't need to know the identity of the person or the specific cause of action? Yeah, you know, I'd like to, with all due respect, break that question down, whether or not you need to know the identity or the cause of action. I would submit that case law establishes that it is about the cause of action. It's not about the particular defendant or the particular actor. And that's our point. It's a very interesting dilemma we have here when you have a knowledge of one source of your injury, Mr. Petters. We have one source of our injury in the Ponzi scheme fraud. We have a separate source of injury through the Polaroid fraud, which is a different fraud. All of our February notes are related to the representation that we're going to be the new senior secured lender and we're going to have a security interest in the Polaroid assets. That's what we were told and that's what we loan the money on. That doesn't have anything to do with the fake invoicing scheme. And so, and if you understand aiding and abetting, and I know that you do, it's not an original tort. The primary fraudster is element one. Aiding and abetting are prongs two and three. And that's the cause of action that we didn't know about. And that's what puts us, I would submit, similar to Mitzias. Okay? And they say it's an outlier because it's scientifically unknowable. Remember Mitzias' MedMal claim, product liability claim later. And they allowed it. Con is, you had inquiry notice in 99. We're going to let you bring your claim in 08 when they issued the deficiency letter. And so Mitzias says, and they quote the Kubrick United States Supreme Court decision, it's about the claim, not about the person. And so we, again, submit a legal impossibility to have gathered facts to know about their aiding and abetting. And just as to Richter, I mean, I don't want to get into alternative grounds. I want to stick to the order. But we did allege Richter actually knew. And the man behind the curtain you don't always have direct contact with. That's the aiding and abetting claim. And so what I told – Well, counsel, Mr. Turner stated it this way, that you had – he said your clients had the limitations, period, to discover, to make inquiry and discover what all had occurred. And, you know, we've had several cases involving or which have come out of the Petters frauds. I mean, it's a fraud of perhaps unprecedented scale. When that became apparent, what about the argument that there was sufficient information out there that any creditor of Mr. Petters would be obliged to make the inquiry, do the investigation to see how did this happen, how did I get involved in this, who might be responsible for my involvement? Doesn't just the size and the scope of Mr. Petters' wrongdoing and the monies involved, doesn't that kind of put this in the area of requiring significant inquiry on your client's part? Your Honor, we knew that he had been arrested for a Ponzi scheme, invoice-diverting fraud. We did not know at that time of aiders and abettors. And the diligent inquiry analysis, your question, shouldn't you have done a diligent inquiry analysis? And we're saying you can't start the statute of limitations on the second source of our injury, on the aiding and abetting, until after 2008, because we were prevented. Suspicion is not enough under Illinois law. Just because you suspect it, it doesn't start. You actually have to, he ruled as a matter of law, we knew or should have known that we were injured and it was wrongfully caused in this cause of action. And this U.S. v. Kubrick Supreme Court case talks about the cause of action, talks about the claim. And so I don't believe it's fair under equity to say that since he was arrested and then everything was stayed and he wasn't convicted and the appeals went all the way to 2013, that somehow you're supposed to engage in a diligent inquiry and plead these facts earlier. I see that I'm out of time. We request for those three reasons. The situs of the injury is a fact question. The footnote that Judge Frank, let me rephrase that. The situs of the injury in the Cayman Island exempt companies is based upon a footnote where he leaps to the agent. And so that hasn't been fully flushed out. And I've already mentioned discovery rule and equitable tolling. Thank you. All right. Thank you, counsel. Thank you for your arguments this morning. The case is submitted and we'll try to have a decision as soon as possible.